**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 SW Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **RACHAEL TAYLOR**, | Case No. 3:25-cv-1051 |
| Plaintiff, | **COMPLAINT** |
| v. | (42 U.S.C. §1983) |
| **BRANDON KELLY; CLAYTON BORDEN; CYNTHIA PORTER; ROBERT ADAMSON; TOBY TOOLEY; BRYAN SUNDQUIST; RYAN HAKOLA; STEVEN HALE; WILLIAM SNYDER; JAMIE BREYMAN; KAREN RHOADES; ANNA PORTNOY; TONYA WELEBER; LUNA SUNG;** and **TERRY SHANLEY**, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Rachael Taylor alleges as follows:

## PRELIMINARY STATEMENT

1.    Plaintiff Rachael Taylor brings this civil rights action under 42 U.S.C. § 1983

against employees of the Oregon Department of Corrections (ODOC) for violating her

Page 1 – **COMPLAINT**

constitutional rights under the Eighth and Fourteenth Amendments.

2. Ms. Taylor is a transgender woman, legally and medically recognized as female, currently in ODOC custody. During the relevant period, ODOC housed her at Oregon State Penitentiary (OSP), a men's prison, despite her classification as female, her known vulnerability to sexual violence, and her repeated requests to be transferred to a women's facility.

3. Plaintiff was raped twice by the same known sexual predator, John Doe—first in December 2019, and again in July 2023—after ODOC officials knowingly housed her with him despite his history of sexual violence and Plaintiff's repeated warnings. ODOC and its staff failed to timely respond to her reports of sexual assault, failed to initiate proper PREA investigations, failed to provide confidential access to PREA advocates, and denied her trauma-informed medical and mental health care following each assault.

4. Throughout her incarceration, ODOC staff subjected Plaintiff to ongoing verbal abuse, misgendering, and discrimination based on her sex and gender identity. Staff ignored or dismissed her reports, retaliated against her for seeking help, and allowed her to remain in unsafe conditions where further abuse was foreseeable and preventable.

5. Despite undergoing gender-affirming surgery in April 2024 and being recognized as female in ODOC records, Ms. Taylor remains housed in a men's prison and continues to suffer the consequences of ODOC's systemic failure to protect her.

6. Plaintiff brings this action to vindicate her constitutional rights and to hold Defendants accountable for their deliberate indifference to her safety, medical needs, and equal protection under the law. She seeks compensatory and punitive damages, declaratory and injunctive relief, and attorney fees and costs.

## JURISDICTION

7. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, federal question jurisdiction, and pursuant to 28 U.S.C. §1343(a)(3) and (4), civil rights jurisdiction.

8. Venue is in the District of Oregon pursuant to 28 U.S.C. §1391(b) because the claim arose in this Judicial District and all Defendants are employed by ODOC in OSP, which is located in Marion County.

## PARTIES

9. Plaintiff Rachael Taylor is a transgender woman currently in the custody of the Oregon Department of Corrections (ODOC). She is legally and medically recognized as female. At all times relevant to this complaint, Plaintiff was housed in ODOC custody, including at Oregon State Penitentiary (OSP), a men's prison, and later at Coffee Creek Correctional Facility (CCCF), a women's prison.

10. Defendant Brandon Kelly is, and at all relevant times was, the Superintendent of OSP. He was responsible for the overall operation of the prison, including decisions related to housing, security, and compliance with PREA and other legal requirements.

11. Defendant Clayton Borden is, and at all relevant times was, a correctional officer at OSP. He was responsible for housing decisions and assigned Plaintiff to a cell with AIC Howard Hill Jr., a known sexual predator, in December 2019.

12. Defendant Cynthia Porter is, and at all relevant times was, a correctional officer at OSP with supervisory authority over the housing, safety, and care of AICs, including Plaintiff.

13. Defendant Robert Adamson is, and at all relevant times was, a correctional officer and designated PREA officer at OSP. He received reports of Plaintiff's sexual assault and failed to initiate or ensure adequate protective or investigative action.

14. Defendant Toby Tooley is, and at all relevant times, the PREA Compliance Manager at OSP. He was responsible for ensuring that PREA standards were followed and that inmates received appropriate responses to sexual assault allegations.

15. Defendant Captain Bryan Sundquist is, and at all relevant times was, a correctional officer and PREA officer at OSP. He interviewed Plaintiff after she reported the 2019 assault but failed to investigate or implement safety measures.

16. Defendant Ryan Hakola is, and at all relevant times was, a lieutenant and PREA officer at OSP. He met with Plaintiff in 2024 regarding the July 2023 rape but refused to investigate.

17. Defendant Correctional Officer Steven Hale is, and at all relevant times was, a correctional officer at OSP who interviewed Plaintiff about the July 2023 rape but failed to initiate protective measures or ensure her safety.

18. Defendant William Snyder is, and at all relevant times was, a correctional officer at OSP who coordinated Plaintiff's request to speak with PREA staff regarding the 2023 rape.

19. Defendant Jamie Breyman is, and at all relevant times was, the Administrator of the Office of Population Management and the chair of ODOC's Transgender and Intersex Committee. He was responsible for reviewing housing placements of transgender individuals and failed to act on Plaintiff's repeated and documented requests for transfer to a women's facility.

20. Defendant Karen Rhoades was, at all relevant times, a Behavioral Health Services (BHS) provider at OSP. Plaintiff reported the July 2023 rape to Rhoades, who dismissed her disclosures and failed to provide appropriate care or initiate an investigation.

21. Defendant Anna Portnoy is, and at all relevant times was, a Qualified Mental Health Professional (QMHP) at OSP. She treated Plaintiff following Rhoades's retirement in

2024 and received reports of prior assaults but failed to initiate appropriate mental health services or referrals.

22. Defendant Tonya Weleber is, and at all relevant times was, a QMHP at OSP responsible for providing trauma-informed mental health treatment to Plaintiff but failed to provide care required by law.

23. Defendant Luna Sung is, and at all relevant times was, a QMHP at both OSP and CCCF. She conducted Plaintiff's initial PREA risk screening in December 2019 and later received reports of rape in April 2024 but failed to take appropriate steps to ensure follow-up or care.

24. Defendant Terry Shanley is, and at all relevant times was, a lieutenant and PREA officer at ODOC. He attempted to speak to Plaintiff in October 2024 regarding the July 2023 rape, but no meaningful investigation followed.

25. At all times relevant, the individual Defendants were acting under color of state law and within the scope of their employment with ODOC. All individual Defendants are sued in their individual capacities.

## FACTUAL ALLEGATIONS

26. Plaintiff Rachael Taylor is a transgender woman currently in the custody of the Oregon Department of Corrections ("ODOC"), housed at various times at Snake River Correctional Institution (SRCI), Oregon State Penitentiary (OSP), and Coffee Creek Correctional Facility (CCCF).

27. On or about November 27, 2019, ODOC transferred Plaintiff from SRCI to OSP, a men's prison, despite Plaintiff's known gender identity and classification as a transgender woman.

28. On or about December 2019, Plaintiff was housed in a cell at OSP with John Doe, a known and dangerous sex offender. On the second day of being housed together, Plaintiff was raped by John Doe.

29. On December 5, 2019, Plaintiff disclosed that she was experiencing sexual harassment and fear for her safety to ODOC mental health provider Luna Sung and completed a Behavioral Health Services (BHS) PREA risk screening.

30. Over the following months, Plaintiff continued to experience ongoing verbal sexual harassment, physical threats, and gender-based abuse from other prisoners and ODOC staff. On April 2, 2021, Plaintiff reported to psychiatric nurse B. Miller that she faced harassment whenever she dressed or presented as a woman at OSP and requested to be transferred to CCCF.

31. In June 2021, Plaintiff disclosed the December 2019 rape by AIC John Doe to a mental health counselor after experiencing increasing mental health symptoms.

32. ODOC PREA officers Robert Adamson and Captain Sunquist met with Plaintiff to discuss the reported rape. Soon after, AIC John Doe learned that Plaintiff had reported the assault, placing her at further risk of retaliation.

33. On August 6, 2021, Captain Adamson sent a communication to ODOC nursing manager C. Coffey confirming Plaintiff was the victim of a PREA incident reported "30 days ago." No meaningful investigation or protection followed.

34. On or about July 4, 2023, Plaintiff was raped again by AIC John Doe. ODOC continued to house Plaintiff in proximity to John Doe despite prior reports and his history.

35. In August 2023, Plaintiff reported the July rape to her assigned mental health counselor, Karen Rhoades. Rhoades dismissed the report and minimized the prior assault as well.

36. In October 2023, Plaintiff attempted to report the rape from DSU approximately

five or six times, including identifying John Doe as the perpetrator, but ODOC staff again failed to take meaningful action.

37. In January 2024, Rhoades retired, and Plaintiff reported the rape again to her new counselor, Anna Portnoy.

38. In March 2024, Correctional Officer Hale questioned Plaintiff about the assault and whether John Doe was retaliating against her. Plaintiff also asked C/O William Snyder to facilitate an interview with PREA Lt. Hakola, who later met with Plaintiff but refused to investigate the assault.

39. In April 2024, Plaintiff underwent gender confirmation surgery at OHSU. Despite her surgery and legal status as female, ODOC continued to house her in a men's prison.

40. While recovering from surgery, ODOC SAL C/O initiated an inquiry into the previously reported rape. Plaintiff was retraumatized by the renewed investigation and the lack of privacy and support.

41. Plaintiff also disclosed the rape again in April 2024 to mental health provider Luna Sung at CCCF. Plaintiff expressed frustration and distress that no investigation had been conducted.

42. In May 2024, Plaintiff met with PREA Sgt. Edwards and again recounted the July 2023 assault, stating that no investigation had occurred and that she had lost hope in the process.

43. In October 2024, PREA Lt. Shanley attempted to speak with Plaintiff about the July 2023 rape, but Plaintiff declined and asked that her legal counsel be contacted.

44. Throughout her time in ODOC custody, Plaintiff has faced routine verbal harassment, including being called slurs such as "faggot" and "tranny," and has been misgendered by ODOC staff. These actions have occurred despite ODOC's knowledge of her

legal gender and vulnerability.

45.     ODOC failed to transfer Plaintiff to a women's facility despite multiple documented reports of sexual abuse, mental health distress, and explicit requests for transfer.

46.     ODOC also failed to provide confidential access to PREA advocates, instead requiring Plaintiff to meet with such individuals in the presence of ODOC staff, in violation of PREA mandates.

47.     As a result of Defendants' actions and inactions, Plaintiff has suffered severe and ongoing psychological trauma, physical injuries, and emotional distress.

## COUNT I

**(42 U.S.C. § 1983 – 14th Amendment – Equal protection)**

**(Against Defendants Kelly, Breyman, Borden, Porter, Adamson, Tooley, Sunquist, Hakola, Hale, and Snyder)**

48.     Plaintiff re-alleges all previous paragraphs as though fully set forth herein.

49.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

50.     Plaintiff is a transgender woman who is legally and medically recognized as female. Despite this status, Defendants housed Plaintiff in a men's prison, subjected her to discriminatory treatment based on her sex and gender identity, and failed to transfer her to a women's facility despite multiple documented requests, known risks, and her escalating vulnerability.

51.     Defendants treated Plaintiff differently from other similarly situated prisoners by:

    (a)    Housing her with a known violent sex offender despite her classification as vulnerable;

    (b)    Refusing to transfer her to a facility consistent with her legal gender;

    (c)    Failing to intervene when she was verbally harassed and misgendered by staff;

    (d)    Denying her access to PREA protections and confidential reporting channels; and

    (e)    Dismissing and ignoring her reports of rape and sexual harassment.

52. Defendant Breyman, who oversaw ODOC's Transgender and Intersex Committee, failed to take appropriate steps to protect Plaintiff or approve her transfer to a safer facility, despite having full knowledge of her classification, her surgeries, and her repeated reports of abuse.

53. Defendants Borden, Adamson, Sunquist, Tooley, and Kelly knowingly exposed Plaintiff to a substantial risk of serious harm by housing her with AIC Howard Hill Jr., a prisoner known for violent sexual assaults, and by failing to act after learning that Plaintiff had been raped.

54. Defendant Hakola, a designated PREA officer, met with Plaintiff in 2024 about the July 2023 rape but refused to investigate her complaint. Other staff, including C/O Hale and C/O Snyder, failed to ensure that Plaintiff was protected from further harm or that her reports were elevated to appropriate authorities.

55. As a result of Defendants' conduct, Plaintiff was treated unequally, discriminated against on the basis of sex and gender identity, and subjected to preventable harm. Their actions were motivated, at least in part, by discriminatory animus or deliberate indifference to Plaintiff's

rights as a transgender woman.

56.  Defendants acted under color of state law and within the scope of their official duties. Their actions and inactions deprived Plaintiff of her clearly established right to equal protection under the Fourteenth Amendment.

57.  As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical harm, psychological trauma, humiliation, and emotional distress.

58.  Defendants' conduct was willful, malicious, and done with reckless or callous disregard for Plaintiff's federally protected rights. Plaintiff is entitled to compensatory and punitive damages.

59.  Plaintiff is further entitled to declaratory and injunctive relief to ensure her safety and prevent future violations of her rights.

60.  Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II

**(42 U.S.C. §1983 – Eighth Amendment – Failure to Protect)**

**(Against Defendants Kelly, Breyman, Borden, Adamson, Tooley, Sunquist, Hakola, Hale, and Snyder)**

61.  Plaintiff re-alleges all previous paragraphs as though fully set forth herein.

62.  The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment, including the failure to protect incarcerated persons from known and substantial risks of serious harm.

63.  At all relevant times, Defendants knew that Plaintiff—an openly transgender woman with a documented history of vulnerability—faced a heightened risk of sexual assault, particularly when housed in a men's prison.

64. Despite this known risk, ODOC officials including Defendants Kelly, Breyman, and Borden assigned Plaintiff to a cell in December 2019 with AIC Howard Hill Jr., a known and dangerous sexual predator serving a sentence for violent sex offenses.

65. On the second day in that cell, Plaintiff was raped by Hill. Defendants failed to investigate the assault at the time or provide Plaintiff with adequate mental health care, protection, or a transfer to a safe facility.

66. Plaintiff later disclosed the rape to mental health staff in June 2021. PREA officers Adamson and Sunquist interviewed Plaintiff but failed to initiate a meaningful investigation or implement protective measures. Hill became aware of Plaintiff's report, exposing her to retaliation and further harm.

67. In July 2023, Plaintiff was raped by Hill a second time. She reported the assault in August 2023 to her counselor, Karen Rhoades, who dismissed the report. Plaintiff repeatedly attempted to report the rape from DSU in October 2023, but her efforts were ignored.

68. In early 2024, Plaintiff again reported the rape to mental health and correctional staff, including Defendants Portnoy, Hale, Snyder, and Hakola. Despite this, no serious investigation was conducted. Defendant Hakola explicitly told Plaintiff that he would not investigate the July 2023 rape.

69. Defendants failed to separate Plaintiff from Hill or otherwise implement protective housing measures despite repeated reports and documentation of Plaintiff's risk status and history of assault.

70. Defendants also failed to provide confidential access to PREA advocates, and Plaintiff was forced to recount her assaults in settings where ODOC staff were present, contrary to PREA standards and basic correctional safety principles.

71. Defendant Breyman, as head of the Transgender and Intersex Committee, had authority to review and approve transfers to women's facilities and failed to act on Plaintiff's repeated and documented requests, despite clear evidence that her housing assignment placed her at continuing risk of sexual assault.

72. Defendants knew of and disregarded an excessive risk to Plaintiff's health and safety. Their inaction, delay, and dismissal of her reports constituted deliberate indifference to her rights under the Eighth Amendment.

73. As a direct and proximate result of Defendants' failure to protect Plaintiff, she suffered repeated sexual assaults, physical injuries, severe psychological trauma, humiliation, and emotional distress.

74. Defendants' conduct was willful, malicious, and done with reckless or callous indifference to Plaintiff's federally protected rights. Plaintiff is entitled to compensatory and punitive damages.

75. Plaintiff is also entitled to equitable relief to ensure her ongoing safety and to prevent future violations of her constitutional rights.

76. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT III

**(42 U.S.C. §1983 – Eighth Amendment – Delay and Denial of Essential Medical Care)**

**(Against Defendants Kelly, Adamson, Tooley, Rhoades, Portnoy, Weleber, and Sung)**

77. Plaintiff re-alleges all previous paragraphs as though fully set forth herein.

78. The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, including deliberate indifference to the serious medical and mental health needs of incarcerated persons.

79. Plaintiff is a transgender woman with a documented history of psychological trauma, sexual assault, and gender dysphoria. She required timely and trauma-informed mental health care, as well as appropriate post-assault evaluation and treatment, particularly following the December 2019 and July 2023 rapes.

80. After Plaintiff was raped in December 2019 by AIC Howard Hill Jr., she disclosed the assault to ODOC mental health staff, including Luna Sung in December 2019 and again to mental health counselors in June 2021. These disclosures were either disregarded, not investigated, or not followed by any meaningful treatment or protective intervention.

81. Plaintiff's July 2023 rape was reported to ODOC mental health staff, including Karen Rhoades in August 2023, and again to Anna Portnoy in January 2024. Rhoades dismissed Plaintiff's disclosures outright, while Portnoy failed to ensure follow-up investigation or mental health care consistent with ODOC policy and federal standards.

82. In April and May 2024, Plaintiff also reported the prior rape to mental health providers including Luna Sung at CCCF. Despite these repeated reports, Defendants failed to initiate a mental health crisis response or refer Plaintiff for appropriate trauma care.

83. Throughout this period, ODOC and its staff failed to provide Plaintiff with confidential access to a PREA advocate, despite Plaintiff's clear entitlement to such under federal law. On at least two occasions, Plaintiff was forced to speak with a PREA advocate in the presence of ODOC staff, violating her right to confidential support and deterring honest disclosure.

84. Defendants Kelly, Adamson, and Tooley were responsible for ensuring that proper mental health services were available to vulnerable AICs at OSP and failed to take action despite actual knowledge of Plaintiff's assaults and ongoing psychological deterioration.

85. Defendants Rhoades, Portnoy, Weleber, and Sung were all directly responsible for Plaintiff's mental health treatment and failed to provide basic therapeutic interventions, post-assault care, or timely referrals to outside mental health professionals.

86. These failures amounted to deliberate indifference to Plaintiff's serious medical and mental health needs. Plaintiff experienced suicidal ideation, persistent psychological trauma, worsening mental health, and a denial of access to care that was required under the Eighth Amendment and ODOC policy.

87. As a direct and proximate result of Defendants' deliberate indifference, Plaintiff suffered prolonged emotional and psychological harm, deterioration in her mental health, humiliation, and severe distress.

88. Defendants' conduct was willful, malicious, and undertaken with callous disregard for Plaintiff's rights. Plaintiff is entitled to compensatory and punitive damages.

89. Plaintiff is also entitled to declaratory and injunctive relief to ensure she receives appropriate mental health treatment moving forward.

90. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for judgment against Defendants as follows:

A. An award of compensatory damages to fully redress Plaintiff's physical pain, emotional distress, psychological trauma, and suffering;

B. An award of punitive damages in an amount sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct in the future;

C. Declaratory and injunctive relief, including but not limited to an order requiring ODOC to:

      a. House Plaintiff in a facility consistent with her legal and medical gender;

      b. Ensure Plaintiff receives confidential access to PREA advocates;

      c. Provide trauma-informed mental health care by qualified professionals; and

      d. Implement training and oversight to prevent future violations of rights of transgender incarcerated persons;

D. An award of reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988;

E. Any such other and further relief as the Court deems just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: June 18, 2025

                                    LAW OFFICES OF DANIEL SNYDER

                                    /s/ John Burgess
                                    John Burgess, OSB No. 106498
                                    johnburgess@lawofficeofdanielsnyder.com
                                    Of Attorneys for Plaintiff